1    VICTOR M. SHER (SBN 96197)
     vic@sheredling.com
2    MATTHEW K. EDLING (SBN 250940)
     matt@sheredling.com
3    TIMOTHY R. SLOANE (SBN 292864)
     tim@sheredling.com
4    **SHER EDLING LLP**
5    425 California Street, Ste. 810
     San Francisco, CA 94104
6    Tel: (628) 231-2500
     Fax: (628) 231-2929
7

8    *Attorneys for Plaintiff*
     *Sacramento Suburban Water District*
9

10

11                  **UNITED STATES DISTRICT COURT**

12              **FOR THE EASTERN DISTRICT OF CALIFORNIA**

13   | SACRAMENTO SUBURBAN WATER DISTRICT, | Case No. _____ |
14   | | |

     SACRAMENTO SUBURBAN WATER
     DISTRICT,

                          Plaintiff,
            vs.

     ELEMENTIS CHROMIUM
     INCORPORATED, OCCIDENTAL
     CHEMICAL CORPORATION, HONEYWELL
     INCORPORATED, BASF CORPORATION,
     PPG INCORPORATED, E.I DU PONT DE
     NEMOURS AND COMPANY, LUXFER
     HOLDINGS PLC, UNIVAR
     INCORPORATED, SIGMA-ALDRICH
     CORPORATION, and DOW CHEMICAL
     COMPANY,

                          Defendants.

     Case No. _____

     **COMPLAINT**

         1. NUISANCE;
         2. NEGLIGENCE;
         3. TRESPASS;
         4. STRICT LIABILITY – DESIGN DEFECT;
         5. STRICT LIABILITY – FAILURE TO WARN;
         6. CAL. CIVIL CODE § 1882.

     **JURY TRIAL DEMANDED**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   PARTIES ............................................................................................................. 1

      A.    Plaintiff ................................................................................................. 1

      B.    Defendants ............................................................................................ 2

III.  JURISDICTION AND VENUE ........................................................................ 4

IV.   FACTUAL ALLEGATIONS ............................................................................ 5

      A.    Sacramento Suburban Water District ................................................... 5

      B.    The Contaminant: Hexavalent Chromium ............................................ 6

      C.    Relevant Hydrogeology ....................................................................... 8

      D.    Air Force's Use of Defendants' Chromate Products at McClellan Caused
            Environmental Release of Hexavalent Chromium at McClellan That Migrated to
            Plaintiff's Wells ................................................................................... 8

      E.    Defendants Introduced Chromate Products into the Market Despite Knowing of Their
            Defects and Failed to Warn Consumers of Those Defects ........................................ 10

      F.    Sacramento Suburban's Injuries and Damages Arising out of Cr(VI)
            Contamination ................................................................................... 11

V.    CAUSES OF ACTION ..................................................................................... 13

      FIRST CAUSE OF ACTION
      Contribution to the Creation of a Nuisance as Against All Defendants .............................. 13

      SECOND CAUSE OF ACTION
      Negligence as Against All Defendants .................................................................. 15

      THIRD CAUSE OF ACTION
      Trespass as Against All Defendants ..................................................................... 17

      FOURTH CAUSE OF ACTION
      Strict Liability – Design Defect as Against All Defendants ............................................. 19

      FIFTH CAUSE OF ACTION
      Strict Liability – Failure to Warn as Against All Defendants .......................................... 20

COMPLAINT                                                                                                   i

SIXTH CAUSE OF ACTION
Liability under California Civil Code Section 1882 as Against All Defendants .................. 23

**VI.  PRAYER FOR RELIEF** ............................................................................................. **24**

**VII. JURY DEMAND** .......................................................................................................... **25**

## I. <u>INTRODUCTION</u>

1.      Plaintiff Sacramento Suburban Water District ("Sacramento Suburban," "the District," or "Plaintiff") is a public drinking water purveyor to businesses and residents in communities in northern Sacramento County, California. Sacramento Suburban seeks to recover the substantial costs necessary to protect the public and restore its damaged drinking water supply, which is contaminated with the toxic chemical, hexavalent chromium ("Cr(VI)").

2.      Cr(VI) is a highly toxic substance linked with numerous health risks, including skin irritation; ulcers in the stomach and intestines; anemia, mouth, tongue, stomach and intestinal cancers and tumors; DNA damage, and other maladies.

3.      The Defendants in this action are the manufacturers and distributors of industrial products that contain Cr(VI), who knowingly and willfully manufactured, promoted and sold products containing Cr(VI) to the United States of America, and specifically to the U.S. Air Force ("Air Force"), when they knew or reasonably should have known that this harmful compound would reach groundwater, pollute drinking water supplies, render drinking water unusable and unsafe, and threaten the public health and welfare, as it has done with respect to Plaintiff's drinking water supply.

4.      Products containing Cr(VI) were used at McClellan Air Force Base in the course of aircraft maintenance activities, as well as other regular activities. Defendants' defective Cr(VI)-containing chromate products, coupled with their failure to warn of those defects, resulted in the contamination of Plaintiff's drinking water supply, to its material and significant detriment.

5.      Plaintiff brings this action to recover all necessary funds to design, construct, install, operate and maintain treatment facilities and equipment required to remove the Cr(VI) from Plaintiff's drinking water supplies and ensure that the parties responsible for the drinking water contamination bear this expense, rather than Plaintiff and its ratepayers.

## II. <u>PARTIES</u>

### A. <u>Plaintiff</u>

6.      Plaintiff Sacramento Suburban Water District is a public drinking water purveyor organized under California Water Code section 30000, et seq. Plaintiff owns and operates drinking

water wells and real estate on which its wells are located, in Sacramento County, California. Sacramento Suburban's headquarters are located at 3701 Marconi Avenue, #100, Sacramento, California 95821.

### B.   Defendants

7.     Defendants are manufacturers, distributors and/or marketers of chromates and related products containing Cr(VI) (referred to collectively as "chromate products"). Such products are chemicals derived from the processing of chromite ore to produce both chromates and dichromates, and products derived therefrom, including, but not limited to, sodium dichromate (a/k/a sodium bichromate), chromic acid, and potassium dichromate (a/k/a sodium bichromate) zinc chromate, and certain paints and primers. Chromate products were used extensively at McClellan Air Force Base during its operation as a military installation.

8.     Each and every Defendant, either directly, or through the stream of commerce, provided chromate products to the United States, including for use at McClellan, or is responsible for doing so as a successor-in-interest to an entity that, either directly or indirectly, supplied chromate products to Air Force at McClellan.

9.     **Elementis Chromium Incorporated** ("Elementis") is a manufacturer, marketer, distributor and seller of chromate products. Elementis is incorporated in the State of Delaware with its principal office in East Windsor, New Jersey. It is the successor-in-interest to American Chrome and Chemical and Harcros Chemical (collectively "Elementis Predecessors"). The Elementis Predecessors, during the time relevant to this litigation, supplied the military, including Air Force, either directly or indirectly, with chromate products, including for use at McClellan.

10.     **Occidental Chemical Corporation** ("Occidental"), also known as "Oxychem," was at times relevant to this litigation a manufacturer, marketer, distributor and/or seller of chromate products. Occidental is incorporated in the State of New York with its principal place of business in Dallas, Texas. Occidental at times relevant to this litigation supplied chromate products to Air Force's operations at McClellan. Occidental is the successor corporation to Diamond Shamrock Company, Diamond Alkali Works, and the Martin Dennis Company (collectively, the "Occidental Predecessors"). Occidental acquired Diamond Shamrock's chromium operations in

1986. The Occidental Predecessors, during the time relevant to this litigation, supplied the military, including Air Force, either directly or indirectly, with chromate products, including for use at McClellan.

11.     **Honeywell Incorporated** ("Honeywell") is a multinational industrial products and technology company incorporated in the State of Delaware and with its principal place of business in Morris Plains, New Jersey. Honeywell is the successor corporation to Mutual Chemical Company of America. Mutual Chemical Company of America, during the time relevant to this litigation, supplied the military, including Air Force, either directly or indirectly, with chromate products, including for use at McClellan. Honeywell is the successor corporation to Allied Chemical. During the time relevant to this litigation, Allied Chemical supplied the military, including Air Force, with chromate products, including for use at McClellan.

12.     **BASF Corporation** ("BASF") is the largest United States affiliate of the German multinational chemical company BASF SE. BASF is the successor in interest to BASF Performance Products LLC (f/k/a Ciba Corporation, f/k/a Ciba Specialty Chemicals Corporation) and is headquartered in Delaware, with a principal place of business located in Florham Park, New Jersey. BASF is the successor corporation to Imperial Paper and Color Corporation ("Imperial"). Imperial, during the time relevant to this litigation, supplied the military, including Air Force, either directly or indirectly, with chromate products, including for use at McClellan.  Imperial was ultimately acquired by Ciba-Geigy Corporation, which in turn spun off its non-pharmaceutical business when it merged with Sandoz and created Novartis AG, creating Ciba Specialty Chemicals Corporation.

13.     **PPG Incorporated** ("PPG") is a global supplier of paints and coatings incorporated in the State of Pennsylvania and with its principal place of business in Pittsburgh, Pennsylvania. PPG is the successor corporation to Natural Products Refining Corporation. Natural Products Refining Corporation, during the time relevant to this litigation, supplied the military, including Air Force, either directly or indirectly, with chromate products, including for use at McClellan.

14.     **E.I Du Pont De Nemours and Company** ("DuPont") is an American conglomerated chemical company, incorporated in the State of Delaware and with its principal

place of business in Wilmington, Delaware. At times relevant to this litigation, DuPont supplied the military, including Air Force, either directly or indirectly, with chromate products, including for use at McClellan.

15.   **Univar Incorporated (**"Univar") is a chemical distribution company incorporated in the State of Delaware with its principal place of business in Downers Grove, Illinois. Univar is the successor corporation to Van Rogers and Waters, Incorporated. During the time relevant to this litigation, Van Rogers and Water, Inc., supplied the military, including Air Force, either directly or indirectly, with chromate products, including for use at McClellan.

16.   **Luxfer Holdings PLC** ("Luxfer") is a global materials technology company incorporated in the United Kingdom with its principal place of business in Salford, England. Its wholly owned subsidiary Luxfer Magtech Inc. is the successor corporation to Truetech, Incorporated, which in turn is the successor corporation to Chemical Compounding Corporation ("CCC"). During the time relevant to this litigation, CCC supplied the military, including Air Force, either directly or indirectly, with chromate products, including for use at McClellan.

17.   **Sigma-Aldrich Corporation** ("Sigma-Aldrich") is a multinational chemical company incorporated in Delaware with its principal place of business in St. Louis, Missouri. Sigma-Aldrich is the corporate successor to Aldrich Chemical. During the time relevant to this litigation, Aldrich Chemical supplied the military, including Air Force, either directly or indirectly, with chromate products, including for use at McClellan.

18.   **Dow Chemical Company** ("Dow") is a multinational chemical corporation incorporated in Delaware and with its principal place of business in Midland, Michigan. Dow is the corporate successor to Essex Chemical Corporation. During the time relevant to this litigation, Essex Chemical Corporation supplied the military, including Air Force, either directly or indirectly, with chromate products, including for use at McClellan.

## III.   **JURISDICTION AND VENUE**

19.   Plaintiff is a citizen of the State of California. None of the Defendants is a citizen of the State of California. Thus, this Court's exercise of subject matter jurisdiction is proper under 28 U.S.C. section 1332.

20.     Each and every Defendant and/or their predecessors-in-interest purposefully availed themselves of the privilege of conducting activities within the Eastern District California, namely through supplying Cr(VI)-containing products to McClellan.

21.     Venue is proper in the Eastern District of California pursuant to 28 U.S.C. section 1391(b) because the acts and omissions giving rise to this claim occurred in the Eastern District of California.

**IV.     FACTUAL ALLEGATIONS**

A.     **Sacramento Suburban Water District**

22.     The District meets its customers' demand for water from municipal supply wells, that draw from the local groundwater aquifer. The District gets a substantial portion of its drinking water supply from its wells. The District's wells are capable of supplying up to 93,000 gallons of water per minute to the District's customers.

23.     The District holds a property interest in its non-overlying groundwater right that is recognized under the law of the State of California. The District's water right is usufructuary, entitling the District to appropriate and use groundwater from the aquifer underlying its service area to supply its customers with drinking water.

24.     The District owns its drinking water wells and pumping and transmission infrastructure.

25.     The District pumps its groundwater out of the North American Sub-basin ("NAS"), a 548-square mile groundwater basin located in California's Sutter, Placer, and Sacramento Counties. The NAS is bounded by the American River to the South, the Bear River to the North, the crystalline basement rock of the Sierra Nevada to the East, and the Feather and Sacramento Rivers to the West. Sacramento Suburban's service area is located within the surface boundaries of the NAS; all of Sacramento Suburban's wells are located within Sacramento Suburban's service area.

26.     Former McClellan Air Force Base is also located within the boundaries of the NAS. McClellan is adjacent to and immediately West of Sacramento Suburban's service area.

27.     The United States, by and through the Air Force, was the owner/operator of former McClellan Air Force Base ("McClellan" or "the Base"), which has also been known as "Pacific Air Depot," "Sacramento Air Logistics Center," "Sacramento Air Depot," "SMAMA (Sacramento Air Materiel Area)," and/or "McClellan Air Field."

28.     McClellan overlies the same groundwater aquifer from which Sacramento Suburban obtains drinking water. The aquifer is coextensive within the entire NAS, including the area demarcated by the combined surface footprint of Sacramento Suburban's service area and McClellan, and including the locations where Sacramento Suburban's drinking water production wells are located.

29.     The NAS groundwater aquifer in the area encompassing Sacramento Suburban's service area and McClellan, and including Sacramento Suburban's wells from which it produces drinking water, is contaminated with Cr(VI).

30.     Sacramento Suburban's wells have produced, produce, and will continue to produce drinking water that is contaminated with Cr(VI).

**B.      The Contaminant: Hexavalent Chromium**

31.     Cr(VI) is a toxic form of the element chromium (Cr) in the +6 oxidation state. Chromium typically occurs in nature in the trivalent state ("Cr(III)") as the mineral chromite. Chromium in the hexavalent state is far less common in nature and is generally anthropogenic.

32.     Industrial compounds and materials containing Cr(VI) are derived from chromium ore, which contains insoluble trivalent chromium most commonly in the mineral chromite. To produce chromate products, chromium ore is processed to convert the trivalent chromium to soluble Cr(VI), resulting in sodium chromate. Sodium chromate is then converted by acidification and crystallization to sodium dichromate, from which chromate products, including those used at McClellan, are derived.

33.     Chromate products are commonly used in pigments, metal finishing processes, including electroplating, wood preservative and fungicides, and in chemical synthesis as an ingredient and catalyst. Examples of chromate products used at McClellan include, but are not limited to, sodium dichromate; chromic acid; zinc chromate; and certain paints and primers.

34.   Cr(VI) is a dangerous contaminant and is linked with numerous health risks, including skin irritation; ulcers in the stomach and intestines; anemia, mouth, tongue, stomach and intestinal cancers and tumors; DNA damage, and other maladies.

35.   A 2007 National Toxicology Program (NTP) study found significant numbers of gastrointestinal tumors in male and female rats and mice that consumed drinking water with Cr(VI). In addition, studies of data collected from China found increased rates of stomach cancer in people exposed to high levels of Cr(VI) from drinking water. Scientific studies have found a higher than average rate of lung and gastrointestinal cancers in workers who inhaled Cr(VI) on the job. There is substantial evidence that Cr(VI) damages DNA.

36.   Information and studies on the toxicity of chromium, as well as its fate, persistence and movement in the environment, have been available since before Air Force began using chromate products at McClellan, and before Defendants provided chromate products to Air Force.

37.   Defendants were at all times relevant to this action aware or reasonably should have been aware of the human health and environmental hazards associated with the use and handling of chromate products, and Cr(VI) specifically.

38.   Total chromium (including Cr(III), Cr(VI) and all other oxidation states) concentrations in solid waste greater than 5 parts per million (ppm), is defined as a hazardous waste pursuant to 40 C.F.R. section 261.24.

39.   Because of Cr(VI)'s grave health implications and in reliance on recent studies, California defined a public health goal to limit Cr(VI) concentrations in drinking water to no more than 0.02 ppb. California is in the process of promulgating an MCL specifically for Cr(VI) in light of the public health goal.

40.   Concentrations of Cr(VI) in the District's wells exceed California's public health goal by several orders of magnitude.

41.   District customers – including children, women of childbearing age, those with impaired immune systems, and others – depend on the NAS aquifer and the District's production wells for their domestic water supply. Use of water produced from the District's contaminated wells threatens those customers with exposure to and injury from Cr(VI). That exposure is

imminent – the District must continue to provide a domestic water supply, and District customers will continue to consume it. Even if District customers avoid drinking water from the NAS aquifer, use for washing, bathing and other domestic activities is a pathway to exposure to Cr(VI).

42. Cr(VI) is a mobile and persistent compound in groundwater.

**C.** **Relevant Hydrogeology**

43. Groundwater, including groundwater containing contaminants, in the NAS aquifer, over which McClellan and the District's service area are located, has and continues to migrate through the aquifer, beyond the surface boundaries of the Base.

44. Hydrogeologic records demonstrate that groundwater has flowed from the Base toward, through and past the District's service area, including the locations of its drinking water production wells, for decades.

45. This groundwater flow and migration occurred while releases of Cr(VI) occurred at the Base and continued once Cr(VI) reached the subsurface and groundwater underlying McClellan. Seasonal groundwater depressions facilitated movement of contaminants including Cr(VI) through the aquifer and toward the District's wells.

46. The highest concentrations of Cr(VI) – both overall and in the District's wells – are generally nearest the Base and decrease with distance from the Base.

**D.** **Air Force's Use of Defendants' Chromate Products at McClellan Caused Environmental Release of Hexavalent Chromium at McClellan That Migrated to Plaintiff's Wells**

47. During the period relevant to this litigation, Air Force was authorized to, and did, contribute to and actually handle, store, treat, transport and/or dispose of contaminants and hazardous substances at McClellan.

48. Among the contaminants and hazardous substances Air Force handled, stored, treated, transported and/or disposed of at McClellan were contaminants and hazardous substances containing Cr(VI), including Defendants' chromate products.

49. Air Force used materials containing Cr(VI), including Defendants' chromate products, for metal plating, among other uses. Metal plating was a routine aspect of airplane

maintenance activities carried out at the Base. Air Force engaged in metal plating as a means of protecting aircraft parts and other items from corrosion. Metal plating was a regular and frequent activity at McClellan, and necessitated the consumption of significant quantities of Defendants' chromate products over the lifespan of the Base.

50.     Materials containing Cr(VI) may also have been used in painting activities, and/or other routine activities undertaken at the Base.

51.     Air Force's handling, storage, treatment, transport and disposal of chromate products containing Cr(VI) were ongoing and continuous through McClellan's closure as an Air Force base in 2001.

52.     Air Force activities involving Defendants' chromate products resulted in the release of Cr(VI) into the groundwater aquifer underlying the Base.

53.     Cr(VI) releases at McClellan occurred via a number of pathways. These include, but were not limited to: leaks from storage containers, piping, floor drains and sumps; accidental spills; leaching from treated and/or untreated industrial waste; settling of airborne emissions; and others.

54.     Total chromium concentrations, of which Cr(VI) is a constituent, in the groundwater aquifer immediately underneath McClellan have been documented at least as high as 840 ppb.

55.     Air Force has characterized Cr(VI) as a contaminant of concern in the main base groundwater plume at McClellan.

56.     Air Force has identified 326 areas at McClellan of known and/or suspected hazardous waste contamination. Many of these waste areas contain or contained Cr(VI).

57.     Volatile organic compounds emanating from the Base caused the contamination of private drinking water wells outside of the Base in the late 1970s and 1980s. These events demonstrated that contaminants from McClellan were migrating from underneath the Base, through the groundwater aquifer and contaminating wells located outside of the Base's surface boundaries.

58.     The groundwater pumped from the District's active wells meets all State of California primary and secondary water quality standards – except for Cr(VI).  Other than Cr(VI), no contaminant present in the District's active wells exceeds regulatory standards, and the District needs only to chlorinate the water at the wellhead before supplying the water directly to the distribution system and the District's customers.

59.     Cr(VI) from McClellan has infiltrated and contaminated nearly all of the District's wells. Nearly all of the District's wells have had Cr(VI) concentrations in excess of California's Cr(VI) Public Health Goal.

**E.     Defendants Introduced Chromate Products into the Market Despite Knowing of Their Defects and Failed to Warn Consumers of Those Defects**

60.     Defendants knew, or reasonably should have known, that:

    a.     Cr(VI) was and is a natural constituent of their chromate products;

    b.     Cr(VI) was and is a mobile and persistent compound in groundwater capable of mixing easily with groundwater, and of migrating quickly and across substantial distances through aquifers;

    c.     Cr(VI) is a dangerous compound that increases the risk of cancer, damages DNA, and presents other health risks when exposed to human beings;

    d.     The gravity of health hazards associated with Cr(VI), coupled with its physical and chemical characteristics, including its mobility and persistence in groundwater, make it a particularly nefarious contaminant in aquifers used for drinking water;

    e.     Releases of Cr(VI) into the environment would be an inevitable consequence of placing chromate products into the stream of commerce in the absence of precautionary measures to prevent or mitigate such releases; and

    f.     Removing Cr(VI) contamination from groundwater aquifers, drinking water wells, and other surface and subsurface properties would require significant expense.

**COMPLAINT**

61.     Despite their actual or constructive knowledge of the hazards inherent in their chromate products, Defendants introduced those products into the stream of commerce and fostered a market for those products by marketing and promoting them, and by concealing the potential for groundwater and drinking water supply contamination inherent in those products.

62.     Defendants were aware, or reasonably should have been aware, of the human health and environmental hazards associated with the use of their chromate products by at least 1937, the year after McClellan became an operative military installation.

63.     Defendants failed to warn their customers, retailers, regulators, public officials or the State of the likelihood that Cr(VI) would be released to the environment as a result of the normal use of their chromate products in the metal plating process and other industrial processes such as were continuously carried out by Air Force at McClellan during the time relevant to this litigation.

64.     Written admonitions provided to purchasers of Defendants' chromate products did not include sufficient warnings describing the likelihood of environmental release of Cr(VI) with the normal and foreseeable use of that product, nor of the propensity for Cr(VI) to infiltrate groundwater aquifers and contaminate drinking water supplies.

65.     As a direct and proximate result of Defendants' introduction of defective chromate products into the stream of commerce, and their failure to warn of those known defects, Cr(VI) was released into the environment at McClellan Air Force Base and polluted the NAS aquifer, including Sacramento Suburban's wells, and has contaminated Sacramento Suburban's drinking water supply, rendering Sacramento Suburban unable to deliver clean drinking water to its customers.

**F.      Sacramento Suburban's Injuries and Damages Arising out of Cr(VI) Contamination**

66.     Cr(VI) has contaminated nearly all of the District's wells. Every one of the District's wells requires wellhead treatment to remove Cr(VI) from drinking water in the absence of removal of Cr(VI) from the aquifer. Additionally, normal and expected increases in the District's customer base and demand will require construction of new drinking water production

wells, each of which will require treatment to remove Cr(VI) at these and any other new production facilities the District must construct. The capital and operational costs of wellhead treatment on the District's existing and anticipated wells are significant.

67.     The District has removed wells from service due to Cr(VI) contamination, and some of these wells are planned for permanent decommissioning. The District must replace the production capacity of these wells with new production wells, necessitating *inter alia* the acquisition of land, and construction and operation of new pumping and transmission facilities, at significant expense to the District.

68.     A significant number of homes and businesses rely on private wells located within the District's service area boundaries. These private wells also suffer from Cr(VI) contamination emanating from McClellan. The District reasonably anticipates that these individual private well users will switch to obtaining their drinking water from the District because the contamination is most severe in the shallow reaches of the aquifer from which the private well draw their supply, and because of the significant capital and operational costs associated with adding wellhead Cr(VI) treatment to each individual well. The District must obtain additional drinking water production to serve this influx of customers, and provide treatment for that new production, at significant expense to the District.

69.     The District has incurred significant costs associated with investigating the extent of Cr(VI) contamination in its wells.

70.     The District has incurred significant costs associated with sampling and monitoring its wells to keep abreast of Cr(VI) concentrations therein, in order to prevent exposing its customers to dangerous levels of Cr(VI).

71.     Plaintiff has been deprived of its right to appropriate, use and enjoy the groundwater underlying its property because of the presence of Cr(VI) therein.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### Contribution to the Creation of a Nuisance as Against All Defendants

72.     Plaintiff Sacramento Suburban Water District incorporates by reference each and every allegation contained above, as though set forth fully herein.

73.     Plaintiff owns property within Sacramento County on which its drinking water extraction and transmission infrastructure is located that has been injured and will continue to be injured by Cr(VI) contamination of underlying groundwater aquifers. Additionally, Plaintiff has a protectible property interest in its groundwater supply that has been injured and will continue to be injured by Cr(VI) contamination of that groundwater.

74.     Defendants, and each of them, by their acts and omissions, including their manufacture, promotion, marketing, sale, distribution, supply, release, spill, defective design of, and/or failure to warn regarding chromate products and/or Cr(VI) at McClellan, contributed to the creation of a condition that adversely affects Plaintiff's property, and permitted that condition to persist, which constitutes a nuisance in the form of serious and on-going contamination of Plaintiff's wells and groundwater supply with Cr(VI).

75.     Defendants, and each of them, wrongfully marketed, promoted, distributed, sold, supplied and/or otherwise entrusted, either directly or indirectly, their chromate products to customers and end-users, including Air Force, when they knew, or reasonably should have known, that:

        a.     Such customers would use Defendants' chromate products as intended or in a reasonably foreseeable manner;

        b.     such use would result in environmental releases of Cr(VI);

        c.     upon release, Cr(VI) would migrate readily into and through groundwater aquifers, thereby contaminating those aquifers, including aquifers used for drinking water supply, and, ultimately, be difficult and costly to remove.

76. Defendants, and each of them, failed to provide adequate warnings of, take precautionary measures to mitigate, or instruct consumers of their chromate products to mitigate, the known hazards and risks associated with use of their chromate products.

77. Defendants, and each of them, thereby fostered a market for their chromate products that artificially inflated demand for their chromate products, given the undisclosed risks associated with use of those products.

78. Cr(VI) contamination in the NAS aquifer and Plaintiff's wells increases the risk of cancer and other diseases to Plaintiff's customers, and is therefore injurious to health.

79. Cr(VI) contamination in the NAS aquifer and Plaintiff's wells prevents Plaintiff from utilizing its right to appropriate, use, and enjoy groundwater from its wells, and therefore obstructs the free use of Plaintiff's property interest in its groundwater.

80. Cr(VI) contamination in the NAS aquifer and Plaintiff's wells, through the creation of a human health hazard and the obstruction of Plaintiff's extraction, sale, and distribution of its groundwater, interferes with comfortable use and enjoyment of Plaintiff's property.

81. Plaintiff did not consent to Defendants', or any of their, acts and/or omissions that created the Cr(VI) contamination in Plaintiff's property.

82. An ordinary person, and an ordinary water district in Plaintiff's position, would be reasonably annoyed or disturbed by Defendants' acts and omissions and the Cr(VI) contamination created thereby.

83. As a direct and proximate result of Defendants', and each of their, acts and/or omissions, Plaintiff sustained injuries and damages as set forth herein.

84. Cr(VI) releases continue to leach into Plaintiff's wells, and Plaintiff continues to suffer therefrom. The contamination of Plaintiff's wells has varied over time. This condition may be discontinued or abated by removal of Cr(VI) from the aquifer, or by removal of Cr(VI) from groundwater once it has been extracted from the aquifer.

85. Defendants are jointly and severally liable for all such injuries and damages as are described herein, and Plaintiff is entitled to recover all such damages in this action.

86.     Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including Cr(VI) contamination of drinking water supplies. Defendants committed each of the acts described herein knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote the sale of their chromate products, in conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon human health, property and the environment. Therefore, Plaintiff requests an award of exemplary damages in an amount that is sufficient to punish Defendants and that fairly reflects the aggravating circumstances alleged herein.

87.     Wherefore, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION

## Negligence as Against All Defendants

88.     Plaintiff Sacramento Suburban Water District incorporates by reference each and every allegation contained above, as though set forth fully herein.

89.     Defendants, and each of them, during the time relevant to this litigation, knew or should have known of the threats posed by Cr(VI) from their chromate products use to human health and the environment, and the risks to groundwater aquifers and drinking water supplies, including the propensity of Cr(VI) from chromate products to infiltrate groundwater aquifers upon release to the environment and the likely harms to drinking water suppliers, and other users of groundwater, as a consequence of such releases.

90.     Based on that actual and/or constructive knowledge, Defendants, and each of them, had a duty to use due care in manufacturing, marketing, promoting, and/or selling their chromate products, including, but not limited to, chromate products used at McClellan Air Force Base.

91.     That duty obligated Defendants, and each of them, to take reasonable precautions to, *inter alia*, remove defects from their chromate products, to warn consumers of their chromate products of known defects therein, and to instruct consumers of their chromate products to adopt reasonable precautions to mitigate or eliminate the risks to human health and the environment, and the risks to groundwater aquifers and drinking water supplies, that derive from normal and foreseeable use of their chromate products.

92.     Defendants, individually and collectively, breached that duty of care by, *inter alia*,

 a. Failing to conduct reasonable, appropriate and/or adequate scientific studies to evaluate the likely environmental fate and transport and potential human health and environmental effects of their chromate products and Cr(VI);

 b. Failing to instruct consumers of their chromate products as to means for preventing environmental release and/or groundwater aquifer contamination of Cr(VI) that was a foreseeable result of the intended and foreseeable use of those products;

 c. Failing to warn of known defects inherent in Defendants' chromate products;

 d. Fostering a market for Defendants' chromate products despite the known defects and hazards inherent in their products.

93.     Defendants, and each of them, were under a duty to comply with California Civil Code section 3479 and breached that duty by contributing to Cr(VI) contamination in Plaintiff's wells. Section 3479 is intended to prevent the injuries to property and the free use and enjoyment thereof such as are described herein. Section 3479 is intended to protect property owners and possessors such as Plaintiff from undue interference with their property rights.

94.     Defendants, and each of their acts and omissions were actual, substantial causes of Cr(VI) contamination in Sacramento Suburban's groundwater supply and its consequences, including Plaintiff's injuries as set forth herein, as Cr(VI) concentrations in Plaintiff's water supply would not have risen to the levels that caused Plaintiff's injuries but for Defendants' acts and omissions.

95.     Defendants, and each of their acts and omissions are the proximate causes of Plaintiff's injuries and damages as set forth herein. No other act, omission, or natural phenomenon intervened in the chain of causation between Defendants' conduct and Plaintiff's injuries and damages.

96.     As a direct and proximate result of Defendants, and each of their, acts and omissions, Plaintiff sustained injuries and damages as set forth herein.

97. Defendants are jointly and severally liable for all such injuries and damages as are described herein, and Plaintiff is entitled to recover all such damages in this action.

98. Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including Cr(VI) contamination of drinking water supplies. Defendants committed each of the acts described herein knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote the sale of their chromate products, in conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon human health, property, and the environment. Therefore, Plaintiff requests an award of exemplary damages in an amount that is sufficient to punish Defendants and that fairly reflects the aggravating circumstances alleged herein.

99. Wherefore, Plaintiff prays for relief as set forth below.

## THIRD CAUSE OF ACTION

### Trespass as Against All Defendants

100. Plaintiff Sacramento Suburban Water District incorporates by reference each and every allegation contained above, as though set forth fully herein.

101. Plaintiff owns and possesses its drinking water production system, including drinking water production wells that extract groundwater from the NAS aquifer in Sacramento County, California.

102. Plaintiff actually and actively exercises its rights to appropriate and use groundwater drawn from its wells.

103. Defendants, and each of them, so intentionally, negligently and/or recklessly manufactured, promoted, marketed, distributed and/or sold their chromate products to Air Force for use at McClellan that they actually and proximately caused Cr(VI) to enter Plaintiff's drinking water production wells and contaminate Plaintiff's drinking water supply.

104. Defendants, and each of them, intended to manufacture, promote, sell, distribute, and/or supply chromate products, directly or indirectly, to the United States.

105.     Environmental release of Cr(VI) at McClellan was the immediate, inevitable and foreseeable result of Defendants' manufacture, promotion, sale, and/or distribution of their chromate products, directly or indirectly, to McClellan.

106.     Defendants, and each of them, during the time relevant to this litigation, knew or should have known that Cr(VI) has a propensity to infiltrate groundwater aquifers when released to the environment; is a mobile and persistent groundwater contaminant capable of moving substantial distances within aquifers; is toxic to human health and the environment; and is therefore extremely hazardous to groundwater, drinking water systems, human health, and the environment.

107.     Defendants, and each of them, knew or should have known that their acts and/or omissions described herein would result in Cr(VI) releases and consequently threaten public health and cause extensive contamination of drinking water supplies.

108.     Plaintiff did not give Defendants, or any of them, permission to cause Cr(VI) to enter its groundwater wells.

109.     As a direct and proximate result of Defendants, and each of their, acts and omissions resulting in Cr(VI) entering Plaintiff's drinking water wells, Plaintiff sustained actual injuries and damages as set forth herein.

110.     Defendants', and each of their, acts and omissions were a substantial factor in causing Cr(VI) to enter Plaintiff's property and Plaintiff's consequent injuries and damages.

111.     Defendants are jointly and severally liable for all such injuries and damages as are described herein, and Plaintiff is entitled to recover all such damages in this action.

112.     Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including Cr(VI) contamination of drinking water supplies. Defendants committed each of the acts described herein knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote the sale of their chromate products, in conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon human health, property and the environment. Therefore, Plaintiff requests an award of exemplary damages in an amount that is sufficient to punish Defendants and that fairly reflects the aggravating circumstances alleged herein.

113.    Wherefore, Plaintiff prays for relief as set forth below.

## FOURTH CAUSE OF ACTION

### Strict Liability – Design Defect as Against All Defendants

114.    Plaintiff Sacramento Suburban Water District incorporates by reference each and every allegation contained above, as though set forth fully herein.

115.    Defendants, and each of them, manufactured, formulated, designed, packaged, distributed, tested, recommended, merchandised, marketed, promoted, sold and/or distributed chromate products containing Cr(VI), which were intended by Defendants to be used for, *inter alia*, metal plating and painting.

116.    Defendants, and each of them, knew that their chromate products were to be purchased and used without inspection for defects.

117.    Defendants' chromate products were purchased or otherwise acquired, either directly or indirectly, from the Defendants, and each of them, by Air Force, and were used at McClellan Air Force Base.

118.    Air Force used the chromate products it acquired from Defendants in a reasonably foreseeable manner.

119.    Defendants' chromate products contained a design defect, namely, the propensity of Cr(VI), a constituent of chromate products, to percolate into groundwater aquifers, migrate throughout aquifers, and eventually contaminate aquifers used for supplying drinking water, thereby increasing the risk of illness or death associated with exposure to Cr(VI).

120.    Such a design defect rendered Defendants' chromate products unreasonably dangerous.

121.    Throughout the time at issue, Defendants' chromate products were defective because an ordinary consumer would not expect chromate products to cause extensive groundwater contamination when used in a foreseeable and intended manner, that such use would damage property and pose significant dangers to public health and the environment.

122.    Additionally, and in the alternative, throughout the time at issue, Defendants' chromate products were defective because the gravity of the potential health and environmental

consequences of their use, including materially increased risk of cancer, mutation, and DNA disruption in humans, and the propensity of Cr(VI) from chromate products to infiltrate groundwater aquifers and damage property interests therein, outweighed the cost to Defendants of reducing or eliminating such risk.

123.   Defendants, and each of their, chromate products contained the aforementioned design defect at the time they left Defendants' possession.

124.   Plaintiff suffered injuries and damages as described herein as a direct and proximate result of the defective design of Defendants' chromate products.

125.   The defective design of Defendants' chromate products was a substantial factor in causing Plaintiff's injuries and damages.

126.   Defendants are strictly, jointly and severally liable for all such injuries and damages as are described herein, and Plaintiff is entitled to recover all such damages in this action.

127.   Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including Cr(VI) contamination of drinking water supplies. Defendants committed each of the acts described herein knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote the sale of their chromate products, in conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon human health, property and the environment. Therefore, Plaintiff requests an award of exemplary damages in an amount that is sufficient to punish Defendants and that fairly reflects the aggravating circumstances alleged herein.

128.   Wherefore, Plaintiff prays for relief as set forth below.

## FIFTH CAUSE OF ACTION

### Strict Liability – Failure to Warn as Against All Defendants

129.   Plaintiff Sacramento Suburban Water District incorporates by reference each and every allegation contained above, as though set forth fully herein.

130.   Defendants, and each of them, manufactured, formulated, designed, packaged, distributed, tested, recommended, merchandised, marketed, promoted, sold and/or distributed

chromate products containing Cr(VI), which was intended by Defendants to be used for, *inter alia*, chrome plating, metal coating, and painting, such as was carried out at McClellan Air Force Base.

131.    Defendants, and each of them, knew that their chromate products were to be purchased and used without inspection for defects.

132.    Defendants' chromate products were purchased or otherwise acquired, either directly or indirectly, from the Defendants, and each of them, by Defendant Air Force, and were used at McClellan Air Force Base.

133.    Defendants, and each of them, at the times they placed chromate products into the stream of commerce, knew or should have known, that use of Defendants' chromate products in their intended manner, or reasonably foreseeable misuse of those products, would result in the spillage, discharge, disposal or release of Cr(VI) to the environment.

134.    Defendants, and each of them, at the times they placed chromate products into the stream of commerce, knew or should have known, in light of the scientific knowledge generally accepted at the time, that:

a.    Cr(VI) was a natural constituent of their chromate products;

b.    Cr(VI) is a mobile and persistent compound in groundwater capable of mixing easily with groundwater, and of migrating quickly and across substantial distances through aquifers;

c.    Cr(VI) is a dangerous compound that poses serious risks to human health that include, but are not limited to, increases in the risk of cancer; DNA damage, and presents other health risks when exposed to human beings;

d.    The gravity of health hazards associated with Cr(VI), coupled with its aquatic mobility, make it a particularly nefarious contaminant in aquifers and wells used for producing drinking water;

e.    Releases of Cr(VI) into the environment would be an inevitable and foreseeable consequence of placing chromate products into the stream of commerce for consumers to use as intended, or with foreseeable misuse, in the absence of precautionary measures to prevent or mitigate such releases;

f.   The manner in which Defendants were manufacturing, formulating, designing, packaging, distributing, testing, recommending, merchandising, marketing, promoting, selling and/or distributing chromate products would result in Cr(VI) contamination of aquifers and wells used for producing drinking water, as a result of ordinary use of their chromate products; and

g.   Removing Cr(VI) contamination from groundwater aquifers, drinking water wells, and other surface and subsurface properties would require significant expense.

135.   These potential risks of Defendants' chromate products presented a substantial danger of drinking water contamination and human exposure to Cr(VI) when Air Force used Defendants' chromate products as intended, or misused them in a reasonably foreseeable manner, at McClellan Air Force Base.

136.   During the time relevant to this litigation, ordinary consumers would not have recognized the potential risk of groundwater contamination and resultant drinking water well contamination associated with the use of Defendants' chromate products.

137.   Despite the known and/or foreseeable environmental and human health hazards, and risks to groundwater aquifers and drinking water supplies, associated with the use of their chromate products, Defendants, and each of them, failed to provide adequate warnings of, take any precautionary measures to mitigate, or instruct users how to mitigate, those hazards and risks.

138.   Plaintiff Sacramento Suburban Water District suffered the injuries and damages described herein, including, but not limited to, the contamination of their drinking water production wells with Cr(VI), as a direct and proximate result of Defendants' failure to warn Air Force of the known and/or foreseeable risks associated with the use of their chromate products.

139.   The lack of sufficient warnings of the propensity for Cr(VI) in chromate products to infiltrate and permeate groundwater aquifers, and lack of instructions for mitigating or abating such infiltration, were substantial causes of Plaintiff's injuries as described herein.

140.   Defendants are strictly, jointly and severally liable for all such injuries and damages as are described herein, and Plaintiff is entitled to recover all such damages in this action.

141.    Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including Cr(VI) contamination of drinking water supplies. Defendants committed each of the acts described herein knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote the sale of their chromate products, in conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon human health, property and the environment. Therefore, Plaintiff requests an award of exemplary damages in an amount that is sufficient to punish Defendants and that fairly reflects the aggravating circumstances alleged herein.

142.    Wherefore, Plaintiff prays for relief as set forth below.

## SIXTH CAUSE OF ACTION

### Liability under California Civil Code Section 1882 as Against All Defendants

143.    Plaintiff Sacramento Suburban Water District incorporates by reference each and every allegation contained above, as though set forth fully herein.

144.    Plaintiff is a utility that owns and operates a water system.

145.    The water that is pumped from Plaintiff's wells is property owned or used by Plaintiff to provide utility services.

146.    The groundwater that supplies Plaintiff's wells is property owned or used by Plaintiff to provide utility services.

147.    By causing the introduction of Cr(VI) into Plaintiff's wells and the groundwater that supply such wells as alleged herein, Defendants, and each of them, injured, altered, interfered with, and/or otherwise prevented from performing its normal or customary function property owned or used by Plaintiff to provide utility services.

148.    As a direct and proximate result of Defendants', and each of their, acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur, investigation, treatment, and monitoring costs and expenses related to Cr(VI) contamination of Plaintiff's water system, in an amount to be proved at trial, for which Defendants are liable pursuant to California Civil Code section 1882.1.

**COMPLAINT**

23

149.    Pursuant to California Civil Code section 1882.2, Defendants are liable for three times the amount of Plaintiff's actual damages, plus the costs of this suit and reasonable attorney's fees.

150.    Wherefore, Plaintiff prays for relief as set forth below.

## VI.   PRAYER FOR RELIEF

WHEREFORE Plaintiff Sacramento Suburban Water District seeks judgment against these Defendants for:

1.    Compensatory damages arising from Cr(VI) contamination of Plaintiff's wells in an amount according to proof;

2.    Injunctive and equitable relief to compel Defendants to abate their nuisance and trespass by removing Cr(VI) from Plaintiff's water;

3.    An award of exemplary damages in an amount sufficient to punish and to deter Defendants from ever committing the same or similar acts;

4.    An award of treble damages, pursuant to California Civil Code section 1882.2;

5.    Costs, including reasonable attorneys' fees, court costs, and other expenses of litigation;

6.    Prejudgment interest; and

7.    Any other and further relief as the Court deems just, proper and appropriate.


Dated:  June 30, 2017                          **SHER EDLING LLP**


By:   */s/ Victor M. Sher*
_____
Victor M. Sher
Matthew K. Edling
Timothy R. Sloane

*Attorneys for Plaintiff Sacramento Suburban*
*Water District*

**COMPLAINT**                                                                                24

1

## VII.   JURY DEMAND

2

3        Plaintiff Sacramento Suburban Water District hereby demands a jury trial on all causes of

action for which a jury is available under the law.

4

5     Dated:  June 30, 2017                    **SHER EDLING LLP**

6

7                                    By:  _/s/ Victor M. Sher_____
                                          Victor M. Sher
8                                         Matthew K. Edling
                                          Timothy R. Sloane
9

10                                        *Attorneys for Plaintiff Sacramento Suburban
                                          Water District*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28