VICTOR M. SHER (SBN 96197)
vic@sheredling.com
MATTHEW K. EDLING (SBN 250940)
matt@sheredling.com
TIMOTHY R. SLOANE (SBN 292864)
tim@sheredling.com
YUMEHIKO HOSHIJIMA (SBN 331376)
yumehiko@sheredling.com
SHER EDLING LLP
100 Montgomery Street, Ste. 1410
San Francisco, CA 94104
Tel:     (628) 231-2500
Fax:     (628) 231-2929

*Attorneys for Plaintiff*
*Rio Linda Elverta Community Water District*

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

DAVID MITCHELL (IL Bar No. 6302250)
MICHAEL CHEN (NY Bar No. 5104831)
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
Telephone: (202) 514-0165
Facsimile No.: (202) 514-8865
david.mitchell@usdoj.gov

*Counsel for the United States*

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RIO LINDA ELVERTA COMMUNITY WATER DISTRICT,<br><br>             Plaintiff,<br><br>   vs.<br><br>THE UNITED STATES OF AMERICA, ET AL.,<br><br>             Defendants. | Case No. 2:17-cv-1349-KJM-CKD<br><br>**STIPULATION AND ORDER REGARDING DISCOVERY PROCEDURE AND ELECTRONICALLY STORED INFORMATION** |
| SACRAMENTO SUBURBAN WATER DISTRICT,<br><br>             Plaintiff,<br><br>   vs.<br><br>ELEMENTIS CHROMIUM INCORPORATED, ET AL,<br><br>             Defendants. | Case No. 2:17-cv-1353-KJM-KJN |

Federal Rule of Civil Procedure 26(f) requires the Parties to develop a proposed discovery plan that states the Parties' views and proposals on, among other things, "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced." Fed. R. Civ. P. 26(f)(3)(C).

The Parties mutually seek to reduce the time, expense and other burdens of discovery of certain electronically stored information ("ESI") and privileged materials, as described further below, and to better define the scope of their obligations with respect to preserving such information and materials.

The Parties therefore are entering into this Stipulation Regarding Discovery Procedure and ESI and respectfully the request that the Court enter it as an Order ("Stipulation and Order").

# I.     DEFINITIONS

1.     The terms used in this Stipulation and Order that are also used in the Federal Rules of Civil Procedure have the same meaning that they have under the Federal Rules, unless otherwise provided in this Stipulation and Order. Whenever the terms set forth below are used in this Stipulation and Order, the following definitions apply:

(a)     "Draft," when used to describe either an electronic or hard copy document, means "a preliminary version of a document that has been shared by the author with another person (by e-mail, print, or otherwise) or the most recent version at the time of collection."

(b)     "Document Family" means a group of related documents including parent and child documents. A parent document is an electronic file that has at least one other electronic file attached to it or embedded within it. A child document is an electronic file that is attached to or embedded within another electronic file.

(c)     "Duplicate," when used to describe either an electronic or hard copy document, means that the document does not show any facial differences, such as the inclusion of highlights, underlining, marginalia, total pages, attachments, markings, revisions, or the inclusion of tracked changes. Differences in system metadata fields, such as date created or modified, that do not affect the face of the document, are not relevant to determining whether the document is a duplicate.

(d)     "embedded e-mails" means earlier e-mail(s) in a string of e-mail communications that are included as part of the top-level e-mail.

(e)     "Gigabyte" means one billion bytes or 1,000 megabytes.

(f)    "Parties" means the parties to this litigation, including their employees and agents.

(g)    "Policy" means a regular practice at an entity that managers know about and expect to be carried out.

## II.    PRESERVATION

2.    <u>ESI That Is Not Reasonably Accessible.</u> The following categories of ESI listed below are not reasonably accessible in this litigation:

(a)    Data stored in a backup system for the purpose of system recovery or information restoration, including but not limited to, disaster recovery backup tapes, continuity of operations systems, data or system mirrors or shadows, or automated generation of versions of files, if such data are routinely deleted or written over in accordance with an established routine system maintenance practice;

(b)    Voice-mail messages;

(c)    Instant messages, such as messages sent on AOL Instant Messenger or Microsoft Communicator;

(d)    Text messages, such as cell phone to cell phone SMS messages;

(e)    Electronic mail sent to or from a smartphone (e.g., BlackBerry, iPhone), tablet (e.g., iPad) provided that a copy of such e-mail is routinely saved elsewhere;

(f)    Other electronic data stored on a smartphone or tablet, such as calendar or contact data or notes;

(g)    Logs of calls made from cellular phones;

(h)    Deleted computer files, whether fragmented or whole (nothing in this order authorizes the intentional deletion of ESI after the duty arose to preserve such ESI);

(i)      Data stored in random access memory ("RAM"), cache memory, or in temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

(j)      Data that is not accessible through the operating system installed on a device;

(k)      Data stored on photocopiers, scanners, and fax machines;

(l)      Server, system, or network logs; an

(m)      Electronic data temporarily stored by scientific equipment or attached devices, provided that the data that is ordinarily preserved as part of a laboratory report is, in fact, preserved in its ordinary location and form.

3.      Nothing in this Stipulation and Order prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of ESI are not reasonably accessible.

4.      The Parties need not preserve, for this litigation, the categories of ESI listed in paragraph 2 unless, on the date that this stipulation and order is entered by the Court, either Party has a Policy that results in the routine preservation of such ESI, in which case such Party shall continue to preserve such ESI in accordance with its Policy.

5.      <u>No Discovery of Material Not Required To Be Preserved</u>.  The Parties shall not seek discovery of items that need not be preserved pursuant to paragraph 2 above. If any discovery request is susceptible of a construction that calls for the production of items that need not be preserved pursuant to paragraph 2, such items need not be searched for, produced, or identified on a privilege log pursuant to Fed. R. Civ. P. 26(b)(5).

6.    <u>Use of Documents During Litigation</u>. Notwithstanding any other provision of this Order, the Parties may take any of the following actions with respect to documents and ESI without breaching their duty to preserve documents and ESI:

(a)    The Parties may continue to work, in the ordinary course of business, on documents that do not meet the definition of Draft in paragraph 1. However, the Parties shall preserve Draft documents for discovery.

(b)    The Parties may move unfiled documents or ESI into files or folders that adhere to an organizational scheme that was created before the complaint was filed in this matter. Nothing in this paragraph prevents the Parties from implementing an organizational scheme that applies only to documents or ESI created after the complaint was filed in this matter.

(c)    The Parties may delete, overwrite, or wipe ESI from devices that are being replaced, upgraded, reimaged, disposed of, or returned at the end of lease, provided that the potentially relevant ESI is first copied to a new location in a manner that preserves the data, including metadata, that must be produced pursuant to Section VI of this Order.

(d)    The Parties may move data from one device to another, or from one location to another, provided that a copy of the ESI remains accessible in the first location or the new copy is created in a manner that preserves the data, including metadata, that must be produced pursuant to Section VI of this Order.

(e)    The Parties may load loose ESI into an enterprise content management system, provided that: (1) the enterprise content management system captures all of the metadata fields that must be produced under this order and does not convert the format of the ESI in a way that makes it significantly less accessible; or (2) the Parties maintain a copy of the ESI in its native format and make their production from this native file collection.

(f)     The Parties may upgrade, patch, reprogram, or customize software that stores relevant data, even if such actions alter the way data is maintained, stored, or viewed, provided that the relevant data itself is not altered.

(g)     The Parties may take any of the following actions with respect to data in a database provided that it is part of the routine use of the database: input additional data; access data; update the software running the database; append new data; and modify existing data.

(h)     The Parties may edit or take down any data on a publicly accessible internet site.

(i)     The Parties may compress, decompress, encrypt, or decrypt data subject to preservation in this matter provided that any data losses during such processes do not result in loss of the metadata required to be produced under this Order or significantly degrade the quality of the data.

(j)     The Parties may update social media sites, but may not take affirmative steps to delete relevant data posted before the filing of the Complaint.

7.     Preservation Does Not Affect Discoverability or Claims of Privilege. By preserving documents or ESI for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

8.     Other Preservation Obligations Not Affected.  Nothing in this agreement affects any obligations of the Parties to preserve documents or information for purposes other than this litigation, such as pursuant to court order, administrative order, statute, or in response to other anticipated litigation.

### III.    COLLECTION

9.    <u>ESI that is not proportional</u>. The broadest possible collection may not be appropriate "to secure the just, speedy, and inexpensive determination" of proceeding. *See* Fed. R. Civ. P. 1. Having considered the amount of discovery that would be proportional to the needs of this case, the Parties agree as set forth below. However, the Parties may request collection without specific limitations noted below applied if proportional to the needs of the case under Fed. R. Civ. Pro. 26(b)(1). The Party requesting additional collection shall notify the other Party in writing its request to remove specific limitations. The Parties shall meet and confer to resolve disputes under the section prior to filing any motion for relief. The Party requesting limitations be removed shall have the burden to prove proportionality under Fed. R. Civ. Pro. 26(b)(1) in any motion for relief.

(a)    When collecting ESI from Microsoft 365—including email in the Microsoft cloud, and documents and ESI stored on SharePoint, OneDrive, and Microsoft Teams—the Parties may place any combination of the following limitations on their eDiscovery collections:

(1)    enable de-duplication when collecting Microsoft Exchange content;

(2)    choose an output option that includes all items that meet the search criteria, including the entire Document Family, but does not automatically include an item and its family members merely because the item has unrecognized format, is encrypted, or is not fully indexed for other reasons;

(3)    choose not to collect versions for items on SharePoint, OneDrive, or Teams; or

(4)     exclude "Recoverable Items" folders when collecting or processing email, provided that there is no indication that the custodian has failed to implement or comply with an appropriate and timely litigation hold.

(b)     If a party applies any limitations above to a collection, the party shall notify the other party within 14 days after completing the collection of documents.

(c)     Nothing in this order prohibits a party from objecting to discovery requests on account of proportionality. By way of illustration and not limitation, that may include limitations on date range or custodians.

10.     <u>Hyperlinked documents.</u> If an email or other document or ESI that is responsive to a discovery request includes a hyperlink to another document or source of ESI, the Parties need not collect and produce the hyperlinked material if it does not meet the search and collection criteria: (a) agreed upon by the Parties; or (b) if the Parties have not agreed, disclosed by the producing party. If hyperlinked documents are collected because they independently meet the search and collection criteria, they need not be treated as part of the Document Family for purposes of Bates numbering or producing metadata, including document load files.

11.     <u>Targeted Requests.</u> After reviewing documents or ESI produced in response to a discovery request, a Party may, after meeting and conferring, propound proportional, targeted requests for the production of ESI that a Party has chosen not to collect or process pursuant to paragraphs 9 or 10 above. Nothing in this order prevents a party from opposing such discovery requests on any grounds, including proportionality.

12.     <u>Filtering.</u> The Parties may de-NIST electronic files, removing known, traceable software applications in the National Software Reference Library ("NIST List"), available at:

https://www.nist.gov/itl/ssd/software-quality-group/national-software-reference-library-nsrl/nsrl-download.

13.  <u>Deduplication.</u>

(a)  *Deduplication of e-mail.* The Parties must deduplicate e-mail.

(b)  The Parties hereby stipulate and agree that in this matter there is a rebuttable presumption of evidence that an e-mail correctly addressed to a recipient was actually delivered to that recipient's e-mail inbox. This stipulation does not apply to draft e-mails.

(c)  *Deduplication of ESI other than e-mail*. The Parties shall identify exact duplicates of electronic files other than e-mails that are larger than zero bytes and smaller than two gigabytes. The Parties shall, to the extent practicable, produce only one copy for each custodian that has possession or custody of the file.

14.  <u>Search Technology</u>.

(a)  If a Party intends to use search terms to limit its collection, review, or production of ESI, it shall notify the receiving Party in writing prior to applying search terms for these purposes. The receiving Party shall have 7 days to object in writing or request a meet and confer. If the receiving Party does not object or request a meet and confer, the Party proposing to use search terms may do so. If the receiving Party objects or requests a meet and confer, the Parties shall meet and confer on proposed search terms. If within 7 days after the meet and confer the receiving Party objects or continues to object in writing to the proposed search terms, the Party that intends to use search terms may do so, but the other Party may file a motion with the Court for relief.  If a Party uses search terms to limit its collection, review, or production of ESI over objection of the other Party, it must include in its response to a request for production a table describing: (i) the collections of ESI for which it proposes to use search terms; (ii) the

search terms that it proposes to use for each collection; and (iii) the computer software or technologies it proposes to use to carry out the search in each collection. If the requesting Party wishes to obtain more information about the proposed search terms it must do so no later than the meet and confer noted above. A Party who fails to timely respond to the notice of proposed search terms or does not timely object in writing waives the right to seek relief from the Court.

(b)     Nothing in this paragraph obligates any Party to agree to perform an electronic search or to accept the results of an electronic search as a sufficient response to a discovery request.

15.     <u>Third-Party Data.</u> The Parties shall meet and confer before serving any subpoenas in this matter on commercial e-mail providers, such as Google™ or Microsoft™, or any social media companies such as Facebook™ or Twitter™.

16.     <u>Privileged Materials Located in the Offices of Counsel.</u>  The Parties agree that, in response to general discovery requests, the Parties need not collect any privileged or work product material that is located in the offices, electronic devices, and electronic accounts of the U.S. Department of Justice, offices of agency counsel, or outside counsel for the Plaintiffs (collectively, "Offices of Counsel"). The Parties understand that such materials will not be produced or placed on a privilege log. This paragraph does not apply to any documents, ESI, or tangible things located outside of the Offices of Counsel, even if they are duplicates of materials located inside the Offices of Counsel. For example, if an attorney sends a privileged e-mail to an employee of a party, the copy of the e-mail located in Offices of Counsel need not be collected, but the copy of the e-mail received by the employee, along with any attachments, must be collected and placed on a privilege log unless it falls into one of the categories exempt from

privilege logging pursuant to paragraph 36. The Parties need not search collections of documents and ESI gathered solely for litigation in another matter.

## IV.    PROCESSING

17.    The Parties need not extract and process embedded files as though they were separate files, if the Parties are technically able to suppress the extraction of embedded files during processing. After production, a receiving Party may request that native files be produced for documents and ESI that appear to contain embedded files but for which the embedded files are not fully viewable.

## V.    REVIEW

**A.    Technology Assisted Review.**

18.    The Parties may use industry-standard Technology Assisted Review tools such as predictive coding. If a Party wishes to use Technology Assisted Review to determine whether documents are responsive or otherwise to limit the documents that it produces, the Party shall notify the other Party of the TAR protocol it intends to apply prior to applying the TAR protocol. The other Party shall have 7 days to object in writing to the proposed TAR protocol or request a meet and confer.  If the receiving Party does not object in writing or request a meet and confer, the Party proposing to use TAR for the purposes above may do so. If the receiving Party does object or request a meet and confer, the Parties shall meet and confer. If within 7 days after the meet and confer the receiving Party objects or continues to object in writing, the Party that intends to use the TAR protocol may do so, but the receiving Party may file a motion with the Court for relief.  If a Party uses a TAR protocol for the purposes above over the objection of the other Party, it must include in its response to a request for production a table describing: (i) the collections of ESI for which TAR was used; and (ii) the TAR protocol used for each collection.

If the requesting Party wishes to obtain more information about the TAR protocol used, it must do so no later than the meet and confer noted above. A Party who fails to timely respond to the notice of a proposed TAR protocol or does not timely object in writing waives the right to seek relief from the Court.

**B.      502(d) Order.**

19.      This Order invokes Rules 16(b) and 26(c) of the Federal Rules of Civil Procedure, as well as the protections afforded by Rule 502(d) of the Federal Rules of Evidence. Accordingly, the provisions in Rule 502(b) do not apply to the disclosure of communications or information in discovery in this matter.

20.      The prosecution and defense of this action will require each Party to review and to disclose large quantities of information and documents, including electronically stored information, through the discovery process. As a result, page-by-page preproduction privilege review would likely impose an undue burden on the Parties' resources.

21.      Each party is entitled to decide the appropriate degree of care to exercise in reviewing materials for privilege, taking into account the volume and sensitivity of the materials, the demands of the litigation, and the resources that the party can make available. Irrespective of the care that is actually exercised in reviewing materials for privilege, the Court hereby orders pursuant to Rule 502(d) of the Federal Rules of Evidence that disclosure of privileged or protected information or documents in discovery conducted in this litigation will not constitute or be deemed a waiver or forfeiture—in this or any other federal or state proceeding—of any claims of attorney-client privilege or work product protection that the disclosing Party would otherwise be entitled to assert with respect to the information or documents and their subject matter.

22.     The Court further orders that because expedited or truncated privilege review is likely necessary for the just, speedy, and inexpensive resolution of this matter, the disclosure of privileged or protected information or documents in discovery conducted in this litigation will be deemed unintentional and inadvertent by order of this Court. Such disclosure will not constitute a waiver of the disclosing Party's right to claim any privilege or protection, including without limitation the deliberative process privilege, that would have applied to the information or documents or their subject matter but for the disclosure, provided only that the party disclaiming waiver employed procedures reasonably designed to screen out privileged materials.

23.     Regardless of whether the procedures to screen out privileged materials were reasonable, the Parties shall not argue, in this forum or any other, that any privileges were waived as a result of disclosures in this litigation.

24.     If a Party determines that it has produced a document upon which it wishes to make a claim of privilege, the producing Party shall, within 14 days of making such determination, give all counsel of record notice of the claim of privilege. The notice must identify each such document and the date it was produced. If the producing Party claims that only a portion of a document is privileged, the producing Party shall provide, along with the notice of the claim of privilege, a new copy of the document with the allegedly privileged portions redacted. Any party that complies with this paragraph will be deemed to have taken reasonable steps to rectify disclosures of privileged or protected information or materials.

25.     If a Party identifies a document that appears on its face or in light of facts known to the Party to be subject to another Party's claim of privilege, the Party identifying the potential claim of privilege is under a good-faith obligation to notify the Party holding the potential claim of privilege. Such notification will not waive the identifying Party's ability to subsequently

challenge any assertion of privilege with respect to the identified document. If the Party holding the potential claim of privilege wishes to assert a claim of privilege, it shall provide notice in accordance with paragraph 24 above within five business days of receiving notice from the identifying Party.

26.     Upon receiving notice of a claim of privilege on a produced document, the receiving Party shall, in accordance with Fed. R. Civ. P. 26(b)(5)(B), promptly sequester the specified information and any copies it has and shall not use or disclose the information, except as provided by Fed. R. Civ. P. 26(b)(5)(B), until the claim is resolved. Copies of privileged documents or information that have been stored on electronic media that is not reasonably accessible, such disaster recovery backup media, are adequately sequestered as long as they are not restored; if such data is restored, the receiving Party shall take steps to re-sequester the restored information. If the receiving Party disclosed the information before being notified, it shall take reasonable steps to prevent further use of such information until the claim is resolved.

27.     Notwithstanding the duties under Rule 26(b)(5)(B), absent an order expressly stating otherwise, a party may make derivative use of, and may pursue leads suggested by, any inadvertently produced privileged information known to the party before duty arose to return, sequester, or destroy the privileged information. The receipt of inadvertently disclosed privileged information shall not be the basis for disqualifying counsel from this action absent a showing of bad faith in receiving the information.

28.     If a Party wishes to dispute a claim of privilege asserted under this Order, such Party shall, within 14 days after the parties have met and conferred pursuant to Local Rule 251, move the Court for an order compelling disclosure of the information. The Party shall follow the procedures described in Fed. R. Civ. P. 26(b)(5)(B) and Local Rule 251 and shall not assert, as a

ground for compelling disclosure, the fact or circumstances of the disclosure. Pending resolution of the motion, the Parties shall not use the challenged information for any other purpose and shall not disclose it to any person other than those required by law to be served with a copy of the sealed motion.

29.     The Parties may stipulate to extend the time periods specified in paragraphs 24, 25, or 28 above.

30.     Nothing in this order overrides any attorney's ethical responsibilities to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform the disclosing party that such materials have been produced.

31.     The Party wishing to assert a claim of privilege retains the burden, upon challenge pursuant to paragraph 28 above, of establishing the applicability of the claimed privilege by a preponderance of the evidence.

32.     This Order does not preclude a Party from voluntarily waiving any claims of privilege. The provisions of Rule 502(a) of the Federal Rules of Evidence apply when a Party uses privileged information to support a claim or defense.

**C.      Document Families**

33.     The Parties may withhold small image files or extracted embedded files that are unresponsive or irrelevant, even if other documents in the same Document Family are responsive.

34.     The Parties shall not withhold documents or ESI on a claim of privilege merely because other documents or ESI in the same Document Family are privileged.

**D.      Privilege Log**

35.     <u>Embedded e-mails</u>.

(a)     An e-mail requires only one entry on the privilege log regardless of the number of embedded e-mails contained within the message body of the e-mail in question. For any e-mail that appears on the privilege log, the author, recipient(s), subject, and date fields may be populated with the metadata from the top-level message and is not required to include metadata from any e-mail embedded in the message body.

(b)     If an e-mail contains both privileged and non-privileged communications, the non-privileged communications must be produced, either by separately producing a copy of the non-privileged communications embedded in the privileged communication, or by producing a copy of the entire communication string with the privileged portions redacted.

(c)     If an e-mail is withheld or any part of it is redacted for privilege, the privilege description on the privilege log must include the basis for withholding each embedded e-mail and the basis for each redaction unless the communication is exempt from privilege logging pursuant to paragraph 36 below.

(d)     If an e-mail is produced with redactions, the redactions must not obscure the headers (from, to, subject, sent date) of any embedded e-mails, unless the identity or contact information of a person is the information that is privileged or protected.

36.     The obligation to provide a log of privileged or work product materials pursuant to Rule 26(b)(5)(A) presumptively does not apply to:

(a)     Communications exclusively between a party and its Office of Counsel;

(b)     Work product created after June 30, 2017 by (i) trial counsel; or (ii) by an agent of trial counsel other than a party or an employee of a party; or

(c)     Internal communications within (i) a law firm, (ii) a governmental law office, or (iii) a legal department of a corporation or another organization.

37.   <u>Deliberative Process Privilege Claims.</u> The Parties agree that the United States' assertion of deliberative process privilege may be made by first identifying documents withheld as deliberative process privileged on the privilege log and, second, providing a declaration supporting that assertion within 45 days after service of the privilege log.

## VI.   PRODUCTION

38.   <u>Procedures for Production</u>:  Unless stated otherwise in a written agreement signed by each of the Parties to this litigation, the following procedures apply to producing documents or ESI. Compliance with these procedures constitutes compliance with Federal Rule of Civil Procedure 34(b)(2)(E) for this matter.

(a)   <u>TIFF Plus Text Productions.</u> Except as stated otherwise below, ESI being produced by a Party shall be converted to 300 dpi, single-page, black-and-white (no shades of gray) TIFF images using CCITT Group IV compression. Where color images are required by this order, the images shall be in the form of .JPG images. Each page must be branded with a unique Bates number, which must not be an overlay of the image. Unless otherwise agreed by the Parties, the TIFF images must be produced on optical media, USB hard drive, or by secure online file transfer, accompanied by: (1) an Opticon™ or IPRO® "cross reference file" which associates each Bates number with its corresponding single-page TIFF image file (or JPG image file for color images) and extracted text file; (2) a "load file" containing the applicable metadata fields described in Appendix A; and (3) Concordance® delimited text files containing extracted or OCR text. The load file must contain Concordance® delimited text that will populate fields in a searchable flat database environment, containing one line for each document. Nothing in this stipulation requires a Party to manually populate a metadata field in Appendix A (other than "Custodian" and "MD5Hash") if such fields cannot be extracted from a document.

     (b)     Paper documents.

          (1)     Documents printed on paper that is larger than 11 x 17 inches may, at the Producing Party's discretion, be produced on paper. Documents produced on paper must be produced as they are kept in the ordinary course of business or must be organized and labeled to correspond to the categories in the request.

          (2)     Documents printed on paper that is 11 x 17 inches or smaller must be scanned and produced on CD-ROM, DVD-ROM, or external hard drive.

     (c)     Word, WordPerfect, and PDF files.

          (1)     For Word, WordPerfect, and PDF files, the text files must contain the extracted text from the document, unless the document has been redacted during privilege review, in which case the text files may contain OCR text.

          (2)     For Word, WordPerfect, and PDF files that contain comments or tracked changes that are not part of the ordinary text, the TIFF images must be generated based on how the document appears when first opened using view settings contained in the file. The receiving party has the option, after reviewing the produced TIFF image, to request the native file.

     (d)     Microsoft PowerPoint files must be processed and produced as full color, half page, JPEG images with one slide per page. Any presenter notes must appear below each slide.

     (e)     E-mail.

          (1)     If the producing party redacts any part of an e-mail before producing it, OCR text may be provided in place of extracted text.

(2)     E-mail attachments must be processed as though they were separate documents, and the load file must include a field in which the producing Party identifies, for each e-mail, the Bates range of any attachment;

(f)     Microsoft Excel files and other spreadsheets must be produced in native file format in a separate folder on the production media. The load file must contain a field that identifies the file path of the native file corresponding to each document, and the Parties must provide a placeholder TIFF image that shows the name of the native file and has a Bates number. If an MS Excel or other spreadsheet file contains privileged text that must be redacted before production, the producing party will image the redacted spreadsheet showing all non-privileged hidden columns and provide OCR text for the file.

(g)     Digital photographs must be produced as full color .JPG image files at their original resolution with Bates numbers branded onto them.

(h)     Microsoft OneNote files may be converted to PDF files prior to processing, review, and production. The Parties need not collect or produce an entire OneNote notebook if only certain sections or pages in the notebook are responsive.

(i)     GIS maps that are contained in a folder (with or without subfolders) may, at the Producing Party's discretion, be converted to a single ZIP file that contains all of the contents of that folder, even if the folder contains certain files types (e.g., JPG images) that would ordinarily be produced using different procedures pursuant to this paragraph. The Producing Party must provide a placeholder TIFF image that shows the name of the ZIP file and has a Bates number. After production of the ZIP file, the receiving party may initiate a meet and confer about whether any files contained with the ZIP file should be produced as separate documents with their own Bates numbers.

(j)     With respect to any other kinds of electronic data, including data from databases, CAD drawings, GIS data, videos, etc., the Producing Party may produce the ESI in native format or a reasonably usable form, or may initiate a meet-and-confer to determine a reasonably useable form for the production. If the file is not one of the types described above, the Producing Party must provide a placeholder TIFF image that shows the name of the file and has a Bates number. If the Parties have not agreed on a production format for the ESI prior to the production, then Rule 34(b)(2)(E)(iii) shall not apply to the production.

39.     The receiving party has the option, after reviewing a black-and-white TIFF image, to enquire whether the original document contained color and, if so, to request color .JPG images.

40.     Except as stated above, a Party need not produce the same electronically stored information in more than one form.

41.     To the extent any production of ESI does not substantially conform with the above or Appendix A, the receiving Party shall notify the producing Party in writing within 14 days. The Parties shall meet and confer regarding any technical or other issues and attempt to resolve any dispute.  If the Parties are unable to resolve any dispute, appropriate relief may be sought by motion to the Court,

## VII.   DISCOVERY LIMITATIONS

42.     All limits on written discovery and depositions set forth in the Federal Rules of Civil Procedure, in local rules, or in orders of this Court remain in effect in this litigation, except as stated in this Order.

43.     Date Range. The Parties need not preserve, collect, or produce documents created after the date on which the complaint was filed in this action. Nothing in this Stipulation and

Order prevents the Parties from applying appropriate date range limitations in their responses to particular discovery requests, even if such date ranges are more narrow, provided that all such date range limitations shall be timely disclosed by the Party applying them.

44.     Written Discovery Requests.

(a)     Unless otherwise stipulated or ordered by the Court, a party may serve no more than 25 written interrogatories, including all discrete subparts.

(b)     Unless otherwise stipulated or ordered by the Court, a party may serve no more than 75 requests for production of documents or ESI.

(c)     For purposes of Rule 26(d)(2)(B), the first 26(f) conference took place on January 13, 2023.

45.     Depositions.

(a)     Unless otherwise stipulated by the Parties, a party must obtain leave of Court before taking a deposition if it would result in more than 10 depositions being taken under Rule 30 or 31 by the plaintiffs, or by the defendants. Depositions of witnesses providing a report pursuant to Rule 26(a)(2)(B) will not be counted for purposes of this subparagraph.

(b)     Each Party shall offer their Rule 30(b)(6) witnesses for 21 hours total, regardless of how many witnesses the Party designates under the rule. Before a notice of deposition or subpoena pursuant to Rule 30(b)(6) is served, the serving party and the organization must confer in good faith about the number and description of the matters for examination and the identity of each person the organization will designate to testify. A subpoena to a nonparty to testify pursuant to Rule 30(b)(6) must request that the nonparty confer with the serving party.

(c)     Except as stated in paragraph 45(b) above or 47(b) below, or as otherwise stipulated or ordered by the Court, all depositions are limited to 1 day of 7 hours.

(d)     Regardless of whether there is a request before the deposition is completed, a deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which: (1) to review the transcript or recording; and (2) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

## VIII.   EXPERT DISCOVERY

46.     Each Party shall not pursue through discovery, trial subpoena or otherwise:

(a)     Notes taken by a witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B);

(b)     Communications between a witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B) and a Party's representative—including, but not limited to, another witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B)—regardless of the form of the communications, except to the extent that the communications:

(1)     Relate to compensation for an expert's study or testimony;

(2)     Are the only source of facts or data that a Party provided and that the expert considered in forming the opinions to be expressed; or

(3)     Are the only source of assumptions that a Party provided and that the expert relied upon in forming the opinions to be expressed.

47.     Expert Depositions.

(a)     Notwithstanding Fed. R. Civ. P. 26(b)(4)(E), the Parties shall bear the costs of their own testifying experts in responding to discovery, and shall not require the Party

seeking discovery to pay the other Party's testifying expert any fee for the time spent in responding to discovery.

(b)   Notwithstanding Fed. R. Civ. P. 30(d)(1), a deposition of a witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B) is limited to 14 hours over two consecutive days. Absent agreement of counsel, no deposition of a witness may last more than seven hours in any calendar day, excluding breaks.

48.   Expert Productions.

(a)   Documents collected or created by a retained expert are within the possession, custody, or control of the Party that has retained the expert. If documents collected by an expert, and not created by or for that expert in connection with this matter, are responsive to a request for production served during fact discovery, such documents must be produced during fact discovery unless privileged. Documents created by or for an expert may be withheld, without providing a privilege log, until the deadline described in subparagraph (c) below. The Parties reserve the right to object to a discovery request on the basis that it seeks Fed. R. Civ. Pro. 26(a)(2) expert disclosures before the Court ordered deadline in this action rather than factual information discoverable under Fed. R. Civ. Pro. 26(b)(1).

(b)   Documents "considered" by expert for the purposes of Fed. R. Civ. P. 26(a)(2)(B)(ii) means those documents that have been received, read, reviewed, or created by the expert for the purposes of forming the opinions set forth in the expert's report but only if the expert actually relies upon in forming his or her opinion.

(c)   Documents considered by a witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B) shall be produced within seven days after producing the witness's report. Such documents shall be produced in accordance with the requirements of Section VI of

this order, except that the Parties shall identify which witness(es) considered each document either in the load file produced along with the documents or in the witness' report. However, the Parties do not need to produce: (1) copies of documents that were previously produced in this matter, provided that the Party identifies the documents by Bates number before the expiration of the seven-day period described in this subparagraph; (2) copies of documents considered by experts that are publicly available (e.g., published materials one might find in a library), unless it would be less burdensome for the producing party to obtain a copy than it would be for the receiving party, and the receiving party requests a copy after receiving the expert report. All such requests shall be fulfilled within 10 days.

(d)     Notwithstanding the provision of Fed. R. Civ. P. 26(a)(2)(B)(iii), the experts' disclosures under Rule 26(a)(2) need not include demonstrative exhibits the expert may use at trial, provided that the facts and data supporting such trial demonstrative exhibits have been disclosed in the experts' report or in the documents considered by that witness. Each party agrees to provide the other parties with copies of any demonstrative exhibits before they are used at trial. The parties will seek to reach agreement on how long before trial demonstrative exhibits must be exchanged. If the parties are unable to reach agreement, one or more parties may ask the Court to set a deadline for exchanging copies of demonstrative exhibits.

### IX.     MISCELLANEOUS PROVISIONS.

49.     In the event that a non-party produces documents or ESI in response to a subpoena, the Party serving the subpoena shall make reasonable provision for prompt access to the produced materials by other parties.

50.     Before filing any motion with the Court regarding electronic discovery or evidence, the Parties shall meet and confer in a good faith attempt to resolve such disputes.

51.     Costs of Document Production. Each Party shall bear the costs of collecting, processing, reviewing, and producing its own documents.

52.     Effect of Order.  The Parties' agreement to this Order is without prejudice to the right of any Party to seek an order from the Court to rescind or amend this Order for good cause shown. Nothing in this Order abridges the rights of any person to seek judicial review or to pursue other appropriate judicial action with respect to any discovery ruling made by the Court in this matter.

53.     Integration/Appendices. The following documents are incorporated herein by reference:

(a)     "Appendix A" is a table describing the fields to be included in the databases produced by each Party.

IT IS SO STIPULATED.

Respectfully Submitted,
SHER EDLING, LLP

DATED: February 7, 2023          By: /s/ with permission
                                 Yumehiko Hoshijima

                                 Attorney for Plaintiff
                                 RIO LINDA ELVERTA COMMUNITY
                                 WATER DISTRICT

DATED: February 7, 2023          /s/
                                 David Mitchell
                                 Michael Chen
                                 U.S. Department of Justice
                                 Environment & Natural Resources Division
                                 Environmental Defense Section

                                 *Counsel for the United States*

1 IT IS SO ORDERED.

2

3 Dated:  February 21, 2023

4 _____
CAROLYN K. DELANEY
5 UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Appendix A:
Fields to Exchange in Databases of Discovery Materials

| Name of Field | Type of field | Contents | | | | |
|---|---|---|---|---|---|---|
| | | E-mail | Word Processing or PDFs | Spreadsheets | Digital Photos | Paper |
| Bates Beg | Text | Bates number for the TIFF image of the first page | Bates number for the TIFF image of the first page | Bates number for the TIFF image of the first page, or, if spreadsheets are not TIFFed, the Bates number of the placeholder page | Bates number branded onto a TIFF file that has the same resolution as the native image file. | Bates number for the TIFF image of the first page |
| Bates End | Text | Bates number for the TIFF image of the last page | Bates number for the TIFF image of the last page | Bates number for the TIFF image of the last page or, if spreadsheets are not TIFFed, the Bates number of the placeholder page | Bates number branded onto the native image file | Bates number for the TIFF image of the last page |
| Bates Beg Attach | Text | Bates number of the first page of the document family. | Bates number of the first page of the document family. | Bates number of the first page of the document family. | Bates number of the first page of the document family. | Bates number of the first page of the document family. |
| Bates End Attach | Text | Bates number of the last page of the document family. | Bates number of the last page of the document family. | Bates number of the last page of the document family. | Bates number of the last page of the document family. | Bates number of the last page of the document family. |
| Custodian | Text | <blank> | The name of the person who had primary control over the location from which the document was collected | The name of the person who had primary control over the location from which the document was collected | The name of the person who had primary control over the location from which the document was collected | <blank> |
| Sender Combined | Paragraph | "From" field | <blank> | <blank> | <blank> | <blank> |
| Addressee Combined | Paragraph | "To" field | <blank> | <blank> | <blank> | <blank> |
| CC Combined | Paragraph | "CC" field | <blank> | <blank> | <blank> | <blank> |

Stipulation and [Proposed] Order Regarding Discovery Procedure
and Electronically Stored Information Appendix A                28

| Name of Field | Type of field | Contents | | | | |
|---|---|---|---|---|---|---|
| | | E-mail | Word Processing or PDFs | Spreadsheets | Digital Photos | Paper |
| BCC Combined | Paragraph | "BCC" field | \<blank\> | \<blank\> | \<blank\> | \<blank\> |
| Email Subject | Paragraph | "Subject" field | \<blank\> | \<blank\> | \<blank\> | \<blank\> |
| Email Sent Date | Date | The date and time the message was sent | \<blank\> | \<blank\> | \<blank\> | \<blank\> |
| Message ID | Text | For e-mails in Microsoft Outlook, the "Message ID" field; For e-mail stored in Lotus Notes, the UNID field | \<blank\> | \<blank\> | \<blank\> | \<blank\> |
| MD5 Hash | Paragraph | The MD5 hash value calculated based on addresses, subject line, body, and attachment names. | The MD5 hash value calculated when the file was collected (or, alternatively, when it was processed into the review database) | The MD5 hash value calculated when the file was collected (or, alternatively, when it was processed into the review database) | The MD5 hash value calculated when the file was collected (or, alternatively, when it was processed into the review database) | \<blank\> |
| File Name | Paragraph | \<blank\> | The name of the file | The name of the file | The name of the file | \<blank\> |
| Confidentiality Level | Text | Level of confidentiality assigned. May be populated with any of the following in accordance with the terms of a protective order: Confidential, Subject to Protective Order, or Confidential – Subject to Protective Order | | | | |
| File_Path | Paragraph | \<blank\> | The path to the native file on the production media (if it is being provided) | The path to the native file on the production media | \<blank\> | \<blank\> |
| Extracted or OCR Text | Paragraph | Text extracted from the message body | Text extracted from the file. However, if the file does not contain text or if redactions were made, then OCR text shall be provided. | Text extracted from the file or if redactions were made, then OCR text shall be provided. | \<blank\> | OCR Text |

Stipulation and [Proposed] Order Regarding Discovery Procedure
and Electronically Stored Information Appendix A                    29